08-0653-cv
Runner v. New York Stock Exchange, Inc.

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2008

(Argued: April 2, 2009                                        Decided: June 10, 2009)

Docket No. 08-0653-cv

VICTOR J. RUNNER,

>       *Plaintiff-Appellee*,

>       v.

NEW YORK STOCK EXCHANGE, INC.,

>       *Defendant-Cross-Claimant-Third-Party*
>       *Plaintiff-Third-Party Defendant-Cross-*
>       *Defendant-Appellant*,

AMEC CONSTRUCTION MANAGEMENT, INC.,

>       *Defendant-Third-Party Plaintiff-Cross-*
>       *Defendant-Third-Party Defendant-*
>       *Appellant*,

ALBIN GUFSTANSON CO., INC.,

>       *Third-Party Defendant-Cross-Claimant.*


Before: CABRANES, HALL, *Circuit Judges*, and SWEET, *District Judge*.[*]

Defendants appeal a judgment of the United States District Court for the Southern District

of New York (Thomas P. Griesa, *Judge*), in which the Court set aside a jury verdict for defendants

and concluded that defendants were liable as a matter of law under section 240(1) of New York's

---

[*] The Honorable Robert W. Sweet, of the United States District Court for the Southern
District of New York, sitting by designation.

1

Labor Law for an injury plaintiff sustained while using a pulley to move a reel of wire down a small flight of stairs. We certify the question to the New York Court of Appeals because of the absence of authoritative state court decisions, the importance of the issue to the state, and the capacity of certification to resolve this litigation.

STEVEN J. AHMUTY, JR., (Christopher Simone, *on the brief*), Shaub, Ahmuty, Citrin & Spratt, LLP, Lake Success, NY, *for Defendants-Appellants New York Stock Exchange, Inc. and AMEC Construction Management, Inc. Co., LLC.*

SCOTT N. SINGER, Sacks and Sacks, LLP, New York, NY, *for Plaintiff-Appellee.*

JOSÉ A. CABRANES, *Circuit Judge*:

We consider here whether (1) section 240(1) of New York's Labor Law, which establishes an absolute liability regime for certain types of elevation-related injuries, covers an injury sustained while lowering a heavy object by means of a makeshift pulley down a small stairway separating two levels of a split-level hallway, and (2) certification to the New York Court of Appeals is appropriate.[1]

## BACKGROUND

In February 2004, plaintiff Victor J. Runner was injured while moving a large reel of wire (about four feet in diameter) between the two levels of a split-level hallway in the basement of the New York Stock Exchange building in lower Manhattan. The reel of wire had to descend approximately four steps from the higher level of the hallway to the lower level. According to defendants,

> [t]o move the reel to the next level [of the hallway], at their supervisor's direction [plaintiff and his coworkers] secured one end of a rope to the reel, wrapped the rope a few times

---

[1] Defendants assert that the District Court erred in overturning the jury's verdict under Rule 50 of the Federal Rules of Civil Procedure because, according to defendants, the record demonstrates a factual basis for the verdict. We agree with the District Court that this case presents no disputed issue of fact and turns solely on a matter of New York law. Accordingly, we do not further address defendant's argument on this score.

around a 2 ½-inch thick steel pipe placed in a manner so as to horizontally span a door jamb, and then the plaintiff, [who was] situated closest to the pipe, and several coworkers behind him took up the slack on the rope. When the reel started to roll "towards" or "down" the first step it pulled plaintiff forward and his hands became caught between the rope and the pipe, causing amputation of several fingers.

Appellant's Br. 11. In other words, plaintiff and his co-workers served as human brakes on a pulley to prevent the reel of wire from tumbling uncontrollably down the stairs. Plaintiff's account of events is substantially similar to defendants'.

Plaintiff brought a number of state law claims against defendants New York Stock Exchange, Inc., and AMEC Construction Management, Inc., to recover for his injury, but this appeal concerns only one of them: the so-called "scaffold law," codified at section 240(1) of New York's Labor Law.[2] A trial was held in the United States District Court for the Southern District of New York (Thomas P. Griesa, *Judge*) and on February 1, 2007, a jury returned a verdict in favor of defendants.[3] The same day, in an oral ruling from the bench, the District Court granted plaintiff's motion to set aside a jury's liability verdict pursuant to Rule 50(b) of the Federal Rules of Civil Procedure. In the District Court's view, section 240(1) applied to injuries involving a "gravity-related risk," which, in the District Court's view, existed as a matter of law in the instant case. J.A. 1573 (Trial Tr. 1048:7, Feb. 1, 2007). In addition, the District Court determined that, "[o]n the basis

---

[2] Titled "Scaffolding and other devices for use of employees," section 240(1) of New York's Labor Law states, in relevant part:

1. All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.

[3] The District Court had jurisdiction over the state law claims in this suit on the basis of the parties' diversity of citizenship. *See* 28 U.S.C. § 1332(a)(1).

3

of the evidence beyond any question[,] . . . the device actually used in the operation did not give proper protection and . . . was a substantial factor in causing the accident." J.A. 1055 (Trial Tr. 1055:8-11, Feb. 1, 2007). Accordingly, the District Court ordered a new trial for damages.

Rather than proceed with a retrial, the parties agreed to a "high-low" settlement with a right to appeal. Under the settlement agreement, plaintiff received $900,000, which he may retain if our Court reverses the District Court's liability determination. If we affirm, plaintiff will receive an additional $1.5 million from defendants. If we remand for a new trial, plaintiff will receive an additional $350,000 without the need for a new trial. On January 28, 2008, the District Court entered judgment for plaintiff in the amount of $900,000 pursuant to the high-low settlement agreement. On appeal, defendants seek review of the District Court's ruling on Rule 50(b), and a November 16, 2005 order denying in part defendants' motion for summary judgment as relates to section 240(1).

## DISCUSSION

### Standard of Review

We review a district court's ruling on a Rule 56 motion for summary judgment and a Rule 50 motion for judgment as a matter of law *de novo*, construing all facts in favor of the nonmoving party. *See, e.g.*, *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 107 (2d Cir. 2008) (summary judgment); *Cobb v. Pozzi*, 363 F.3d 89, 101 (2d Cir. 2003) (post-verdict judgment as a matter of law). Summary judgment is only warranted upon a showing "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The standard for post-verdict judgment as a matter of law is the same as for summary judgment under Fed. R. Civ. P. 56." *Cobb*, 363 F.3d at 101 (internal quotation marks omitted); *see also* Fed. R. Civ. P. 50(a)(B) (authorizing judgment as a matter of law where "a claim or defense . . . can be maintained or defeated only with a favorable finding [of law] on that issue").

4

**New York's "Scaffold Law"**

On its face, New York's "scaffold law" applies broadly to any use of "pulleys" or "ropes" used "in the . . . repair[]" of any building. N.Y. Labor Law § 240(1). Were we to rely simply on the statute's "plain meaning," we would agree with the District Court that New York's "scaffold law" applies to the instant case, in which plaintiff was injured while moving a large, heavy object by means of a makeshift pulley as part of a construction project at the New York Stock Exchange. However, we must apply the statute as it has been interpreted and applied by New York's highest court. As we have previously explained,

> our role as a federal court sitting in diversity is not to adopt innovative theories that may distort established state law. Instead we must carefully predict how the state's highest court would resolve the uncertainties that we have identified. In making this prediction, we give the fullest weight to pronouncements of the state's highest court . . . while giving proper regard to relevant rulings of the state's lower courts.

*The Travelers Ins. Co. v. Carpenter*, 411 F.3d 323, 329 (2d Cir. 2005) (internal quotation marks, citations, and alterations omitted).

The opinions of the New York Court of Appeals are relevant in two important respects not immediately apparent from the face of the statute. First, New York's "scaffold law" imposes absolute liability upon landowners and general contractors. *See Rocovich v. Consol. Edison Co.*, 78 N.Y.2d 509, 513 (1991) ("[W]e have interpreted the section as *imposing absolute liability* for a breach which has proximately caused injury."); *see also Blake v. Neighborhood Hous. Servs. of N.Y. City, Inc.*, 1 N.Y.3d 280, 287-89 (2003) (stating that "the phrase 'strict (or absolute) liability' in the Labor Law § 240 (1) context is different from the use of the term elsewhere" and explaining that section 240(1) requires proof of causation). Second, New York limits liability under section 240(1) to accidents related to the inherent effects of gravity. As explained by the New York Court of Appeals, circumstances in which the statute applies

> entail a significant risk inherent in the particular task because of the relative elevation at

5

which the task must be performed or at which materials or loads must be positioned or secured. The contemplated hazards are those related to the effects of gravity where protective devices are called for either because of a difference between the elevation level of the required work and a lower level or a difference between the elevation level where the worker is positioned and the higher level of the materials or load being hoisted or secured. It is because of the special hazards in having to work in these circumstances, we believe, that the Legislature has seen fit to give the worker the exceptional protection that section 240(1) provides.

*Rocovich*, 78 N.Y.2d at 514.

Defendants argue that the District Court's interpretation of section 240(1) was too broad. According to defendants, section 240(1) only applies to injuries that are the direct result of "elevation-related hazards," in the sense of the particular risks that attend working only at an elevated level, not at ground level. *Ross v. Curtis-Palmer Hydro-Elec. Co.*, 81 N.Y.2d 494, 500 (1993). Quoting the New York Court of Appeals decision in *Ross*, defendants emphasize that the statute

was designed to prevent those types of accidents in which the scaffold, hoist, stay, ladder or other protective device proved inadequate to shield the injured worker from harm *directly* flowing from the application of the force of gravity to an object or person. *The right of recovery afforded by the statute does not extend to other types of harm, even if the harm in question was caused by an inadequate, malfunctioning or defectively designed scaffold, stay or hoist.*

*Id.* at 501 (emphasis altered). Defendants argue that the New York Court of Appeals has recognized only two categories of direct, elevation-related injuries covered by section 240(1): "falling objects" and "falling workers." Appellant's Br. 18 (citing *Narducci v. Manhasset Bay Assoc.*, 96 N.Y.2d 259, 267 (2001) (noting, in turn, that "Labor Law § 240 applies to both 'falling worker' and 'falling object' cases") Because the instant case involved neither a falling object that directly struck plaintiff nor a falling worker, defendants claim that section 240(1) does not apply. Defendants offer a litany of illustrative cases highlighting various limitations on section 240(1), *see, e.g., Toefer v. Long Island R.R.*, 4 N.Y.3d 399, 405 (2005) (finding no liability where worker fell from a flatbed truck); *Smerka v. Niagra Mohawk Power Corp.*, 616 N.Y.S.2d 114, 115, 206 A.D.2d 891, 891-92 (4th Dep't 1994) (assigning no liability in the absence of any height differential), none of which address the

6

material facts of the instant case.[4]

Plaintiff emphasizes that section 240(1) "is to be construed as liberally as may be for the accomplishment of the purpose for which it was framed," *Narducci*, 96 N.Y.2d at 267 (internal quotation marks and alteration omitted), and that the "scaffold law" applies to his injury because it covers all "hazards . . . related to the effects of gravity where protective devices are called for . . . [as the result of] the relative elevation at which the task must be performed or at which materials or loads must be secured," *Rocovich*, 78 N.Y.2d at 514. Plaintiff also argues that New York courts have interpreted the two classic categories of section 240(1) liability—falling objects and falling workers—as exemplary, not exclusive classifications. *See, e.g., Carroll v. Metro. Life Ins. Co.*, 694 N.Y.S.2d 369, 370, 264 A.D.2d 336, 337 (1st Dep't 1999) ("[T]he lack of evidence that plaintiff employee fell or was struck directly by a falling object is not fatal to his Labor Law § 240(1) cause of action, since the facts . . . suggest that the injuries were caused by a defective safety device, that proved inadequate to shield the injured worker from harm directly flowing from the application of the force of gravity to an object." (internal quotation marks omitted)); *Skow v. Jones, Lang & Wooton Corp.*, 657 N.Y.S.2d 709, 710, 240 A.D.2d 194, 194-95 (1st Dep't 1997) (holding that section 240(1) liability existed where a plaintiff injured his back after he bore the full weight of a pump while descending a ladder because his co-workers lost their grip, even though neither the plaintiff nor the pump "fell"). In the alternative, plaintiff argues that the reel of wire was a "falling object" because it

_____

[4] Although defendants did not discuss in their brief the specific facts of *Ross*, we pause to note the factual significance of that case. The plaintiff suffered a crippling back injury while working on a poorly positioned, makeshift scaffold. *See Ross*, 81 N.Y.2d at 498. The plaintiff did not fall, and nothing fell on him. The New York Court of Appeals held that section 240(1) did not apply to those facts because the makeshift scaffold served its "core objective of . . . preventing plaintiff from *falling* down the shaft," even though it may have contributed to some other injury. *Id.* at 501 (emphasis added). The plaintiff's injury, though arguably caused by the scaffold, "was wholly unrelated to the hazard which brought about [the] need [for a scaffold] in the first instance," *id.* at 501, namely falling. In other words, the plaintiff's injury, although occurring when he was working at an elevation, was not caused by the direct application of gravity to the plaintiff.

7

fell down the hallway stairs dragging plaintiff into the makeshift pulley that was lodged in the doorframe.

**Certification**

Both New York law and our own local rules permit us to certify to New York's highest court "determinative questions of New York law [that] are involved in a case pending before [us] for which no controlling precedent of the Court of Appeals exists." 22 N.Y.C.R.R. § 500.27; *see also* 2d Cir. R. 0.27 ("Where authorized by state law, this Court may certify to the highest court of a state an unsettled and significant question of state law that will control the outcome of a case pending before this Court."), *available at* 28 U.S.C. Rules Pamphlet, Pt. I 352 (2008). However, we do not certify a question of unsettled state law merely because state law permits it. "We resort to certification sparingly, mindful that it is our job to predict how the New York Court of Appeals would decide the issues before us." *Highland Capital Mgmt., LP v. Schneider*, 460 F.3d 308, 316 (2d Cir. 2006) (internal quotation marks and brackets omitted).

Whether we ask a state court to resolve unsettled legal questions will depend on, among other factors: "(1) the absence of authoritative state court decisions; (2) the importance of the issue to the state; and (3) the capacity of certification to resolve the litigation." *O'Mara v. Town of Wappinger*, 485 F.3d 693, 698 (2d Cir. 2007); *see also Reliance Ins. Co. v. Polyvision Corp.*, 474 F.3d 54, 58 (2d Cir. 2007) (characterizing the same three factors noted in *O'Mara* as "three *principal* issues" (emphasis added)); *Tinelli v. Redl*, 199 F.3d 603, 606 n.5 (2d Cir. 1999) (noting that "[c]ertification . . . is not proper where the question does not present a complex issue, there is no split of authority and sufficient precedents exist for us to make [a] determination" (internal quotation marks omitted)).

In light of this guidance, we conclude that the application of section 240(1) is appropriate for certification. First, this case presents several questions that have not yet been addressed by the New York Court of Appeals. The New York Court of Appeals has not spoken directly on the issue of

whether "falling objects" and "falling workers" are exclusive or exemplary categories of liability under section 240(1). Nor has the New York Court of Appeals had an opportunity to address whether the type of injury in this case—caused when a worker was pulled forward and into a device as a result of an object descending a set of stairs—is directly or tangentially related to the effect of gravity, or whether a staircase of approximately four steps is sufficient to create a elevation-related risk.

Second, we are mindful that, in dealing with a statute that imposes absolute liability, particular fidelity to legislative intent is appropriate, and the New York Court of Appeals is in a far better position to interpret the intent of New York's legislature than we are. We also note that, according to our search of electronic databases, in the last five years the New York Court of Appeals and the Appellate Division of the Supreme Court have examined roughly one-thousand appeals involving section 240(1), suggesting that this is an active and important area of state law.[5]

Third, a response from the New York Court of Appeals will likely end this litigation. The questions presented are purely legal, and require interpretation of a New York statute. In addition, the parties have agreed not to pursue retrial for damages, having stipulated to a settlement for fixed sums if we should affirm, reverse, or remand for a new trial. This litigation will end at the appellate level, one way or another.

Accordingly, we certify the following questions to the Court of Appeals of the State of New York:

I.      Where a worker who is serving as a counterweight on a makeshift pulley is dragged into a pulley mechanism after a heavy object on the other side of a pulley rapidly descends a small set of stairs, causing an injury to plaintiff's hand, is the injury (a) an "elevation related injury," and (b) directly caused by the effects of gravity, such that

---

[5] In light of the volume of cases involving section 240(1), it is perhaps understandable that, as the New York Court of Appeals has observed, there are occasionally varying holdings on the same issue. *See, e.g., Toefer*, 4 N.Y.3d at 408 (collecting cases involving falls from flatbed trucks).

9

section 240(1) of New York's Labor Law applies?

II.     If an injury stems from neither a falling worker nor a falling object that strikes a plaintiff, does liability exist under section 240(1) of New York's Labor Law?

The New York Court of Appeals may reformulate or expand upon these questions as it sees fit, based on the record of this case.

## CONCLUSION

For the reasons stated above, two questions are CERTIFIED to the New York Court of Appeals.

The Clerk of the Court shall transmit to the New York Court of Appeals a notice of certification, together with a copy of this opinion and a complete record of the case, including the set of briefs, appendices, and record filed by the parties in this Court. This panel will retain responsibility for the decision of this case until we have reviewed the response of the New York Court of Appeals to our certification.

The parties shall bear equally any costs or fees imposed by the New York Court of Appeals.