**STATE of Minnesota, Respondent,**

v.

**Brittany Michele SEAVER, Appellant.**

**No. A11–1909.**

Court of Appeals of Minnesota.

Sept. 24, 2012.

Lori Swanson, Attorney General, St. Paul, MN; and Michael O. Freeman, Hennepin County Attorney, Michael Richardson, Assistant County Attorney, Minneapolis, MN, for respondent.

David W. Merchant, Chief Appellate Public Defender, Rachel F. Bond, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by WRIGHT, Presiding Judge; SCHELLHAS, Judge; and LARKIN, Judge.

## OPINION

SCHELLHAS, Judge.

On appeal from her conviction of aiding and abetting first-degree burglary, second-degree assault, and attempted first-degree aggravated robbery, appellant argues that the district court erred by (1) sustaining the state's gender-based *Batson* challenges to her exercise of peremptory strikes of two potential male jurors; (2) failing to give an accomplice-testimony jury instruction; (3) limiting her testimony that her alleged criminal conduct was motivated by fear for her children's safety; and (4) imposing an upward-durational-departure sentence. Because we conclude that the district court clearly erred when it sustained the state's gender-based *Batson* challenge, we reverse and remand for a new trial.

## FACTS

On October 7, 2010, M.J., appellant Brittany Seaver's former boyfriend, told Seaver by telephone that he possessed $25,000. Seaver told her current boyfriend, Marquis Rollins, and Heidi Stene about M.J.'s money, and the three of them planned to steal M.J.'s money that night. In preparation for the plan, Seaver dropped off her two children at Rollins's apartment so that Rollins's sister could babysit them. With Rollins and Stene as passengers in her car, Seaver then drove to pick up another participant in the plan, Devorshier Agee, and the four of them drove to M.J.'s apartment building. Upon arrival, M.J. invited Seaver and Stene into his apartment. After some time, Stene left M.J.'s apartment and then let Rollins and Agee into the apartment building. Rollins then pretended to hold Stene hostage with a gun and burst into M.J.'s apartment with Agee behind him. Rollins beat M.J. while Seaver and Stene lay on the floor and Agee looked for the money. A neighbor interrupted the attack by knocking on M.J.'s door. M.J. escaped from his apartment, and Rollins and Agee left the apartment. The police quickly caught Agee near M.J.'s apartment building. Seaver and Stene left the apartment, drove away in Seaver's car, and soon called the police.

Seaver gave police officers inconsistent statements. Seaver first stated that she was merely a witness to the crime. Eventually, she admitted that she knew the assault was planned and that the group was looking for M.J.'s money.

Stene pleaded guilty to charges in connection with her participation in the crime, and Agee testified that the state's charges against him were still pending. Seaver proceeded to trial on the charges filed against her. During voir dire, Seaver exercised her first four peremptory strikes against four potential male jurors: B, H, M, and V. The state challenged Seaver's peremptory strikes under *Batson*, alleging that Seaver's peremptory strikes were impermissibly gender based. In response to the state's *Batson* challenge, the district court stated in part:

I do find that there has been a *Batson* violation. The question in this case is how to address it. I am going to do it in this way, and this is completely arbitrary, in a way: I am going to allow two of the strikes, [B] and [V], and I'm doing it for this reason: I think that [B] being a victim is a more legitimate reason. The reasons given for the others are weak.

I will just note that I always make an estimate as to who the parties are going to strike, and I wrote down that the defense would likely strike [V]. I don't think I believed that he was going to be struck for the reasons stated, but for different ones, but I anticipated that he would be struck. And the other people I had written down that he would strike were not men. I can understand why the defense might not want a person who is obviously well-educated and would be a leader on the jury and probably could well be the Foreperson. The reasons given I don't necessarily buy, but I think there are other reasons.

So for that reason, I will allow the defense's strike of [V] and [B], but since I found *Batson* violations, I will not allow the other two.

The district court sustained the state's gender-based *Batson* challenges to Seaver's exercise of two peremptory strikes of potential male jurors H and M and denied the state's *Batson* challenges to Seaver's exercise of two peremptory strikes of potential male jurors B and V, dismissing B and V from the jury.

At trial, Stene testified that Seaver planned the crime. Agee testified that when Seaver and the others picked him up, they told him that Seaver knew a man who had $25,000 and that they were "going to find a way to get the money from him." Seaver did not request, and the district court did not give, an accomplice-testimony jury instruction.

Before trial, the district court granted the state's motion in limine to preclude "any testimony or argument that [Seaver] was afraid for the safety of her children" on the basis that the evidence was irrelevant and more prejudicial than probative. Seaver's primary defense at trial was duress. Seaver testified that Rollins held a gun to her head while she was driving to M.J.'s apartment and forced her to participate in the robbery of M.J. She also testified that she feared for her children's safety because they were at Rollins's apartment, but the district court interrupted and limited Seaver's testimony because of its pretrial ruling.

A jury convicted Seaver of all counts. This appeal follows.

## ISSUE

Did the district court clearly err when it sustained the state's gender-based *Batson* challenges to Seaver's exercise of peremptory strikes of two potential male jurors during the jury-selection process?

## ANALYSIS

### I.

■ We first address Seaver's claim that the district court erred when it sustained the state's gender-based *Batson* challenges to Seaver's exercise of two peremptory strikes of potential male jurors H and M. "Because the existence of ... discrimination in the exercise of a peremptory strike is a factual determination, [an appellate court] give[s] great deference to the district court's ruling and will not reverse unless it is clearly erroneous." *State v. Martin*, 773 N.W.2d 89, 101 (Minn.2009).

■ Peremptory strikes allow a party to strike a potential juror whom the party believes will be less fair than some others

and, by this process, to select as final jurors the persons whom the party believes will be most fair. *Id.* at 100. But the Equal Protection Clause forbids peremptory strikes on the basis of gender. *J.E.B. v. Alabama,* 511 U.S. 127, 128–31, 114 S.Ct. 1419, 1421, 128 L.Ed.2d 89 (1994); *see also United States v. Grant,* 563 F.3d 385, 388 (8th Cir.2009) (same). "[G]ender, like race, is an unconstitutional proxy for juror competence and impartiality." *J.E.B.,* 511 U.S. at 129, 114 S.Ct. at 1421. Gender discrimination in the jury-selection process is a matter of first impression in Minnesota state appellate courts.

"To determine whether a peremptory strike was discriminatory, we apply the three-step test articulated by the United States Supreme Court in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)." *State v. Carridine,* 812 N.W.2d 130, 136 (Minn.2012). Under the three-part *Batson* test, first, the opponent of the peremptory strike must establish a prima facie case that the proponent of the peremptory strike exercised that strike on the basis of gender; second, if a prima facie case is established, the proponent of the peremptory strike carries the burden to articulate a gender-neutral reason for exercising the peremptory strike; and, third, the district court must determine whether the opponent of the peremptory strike carried its burden of proving that the gender-neutral reason was a pretext for purposeful discrimination. *See id.* (articulating the *Batson* test for race-based challenges). The supreme court has emphasized "[t]he importance of clarity at each step of the analysis" because "the opponent has the burden of proving a prima facie case, the proponent has the burden of production of a race-neutral explanation, and the opponent has the ultimate burden of proving pretext and discrimina-

tory intent." *State v. Reiners,* 664 N.W.2d 826, 832 (Minn.2003). At each step of the analysis, the district court must determine whether the appropriate party has met its burden before the court continues to the next step in the analysis. Minn. R.Crim. P. 26.02, subd. 7(3); *see State v. Pendleton,* 725 N.W.2d 717, 725–26 (Minn.2007) (noting that the district court did not follow *Batson* precedent or procedure when it did not decide whether the opponent of the peremptory strike established a prima facie case but instead allowed the proponent to respond and the opponent to rebut that response).

In this case, the district court said, "I am not going to rule until all three stages are dealt with," and the court did not rule until the parties made their arguments regarding all three steps of the *Batson* analysis. As in *Pendleton,* the district court did not follow *Batson* precedent or procedure when it did not rule at each step of the *Batson* analysis. *See Pendleton,* 725 N.W.2d at 725–26. Nevertheless, appellate courts do not reverse a district court's *Batson* ruling "because of its failure to follow the prescribed procedure"; rather, appellate courts "examine the record without deferring to the district court's analysis." *Id.* at 726. We therefore proceed to examine the record without deferring to the district court's analysis.

*Step One of Batson Analysis*

We first address whether the state carried its burden of proving a prima facie case of gender discrimination. To prove its prima facie case, the state must show that one or more members of a gender have been excluded and that the "circumstances of the case raise an inference that the exclusion was based on [gender]." *Martin,* 773 N.W.2d at 101 (quotation omitted). The state "can make a prima facie case of discriminatory jury selection

by the totality of relevant facts." *Id.* (quotation omitted). With regard to racial discrimination, "[w]hether the circumstances of the case raise an inference of discrimination depends in part on the races of the defendant and the victim." *Angus v. State,* 695 N.W.2d 109, 117 (Minn.2005). Although using "a peremptory challenge to remove a member of a racial minority, alone, does not establish a prima facie case," *Pendleton,* 725 N.W.2d at 726, "[t]he inference of discrimination can be drawn by proof of disproportionate impact upon the racial group," *State v. Moore,* 438 N.W.2d 101, 107 (Minn.1989).

■ In this case, in challenging Seaver's peremptory strikes of B, H, M, and V, the state argued to the district court that only 7 of the 21 potential jurors on the panel were men, and that "[b]ased on the first four strikes, it appear[ed] that defense counsel [was] striking those first four strictly because they were men." Seaver argues that merely because a member of a gender has been excluded does not necessarily establish a prima facie showing of discrimination. But Seaver did not use one peremptory strike to strike one male; she used four peremptory strikes to strike four males. Because of the disproportionate impact upon the gender group, we conclude that the district court did not err in determining that the state established a prima facie case of gender discrimination. *See State v. Campbell,* 772 N.W.2d 858, 863 (Minn.App.2009) (noting that record supported district court's conclusion that state established a prima facie case of racial discrimination when defendant, who was Caucasian and was accused of making terroristic threats against two Latino victims, exercised four peremptory strikes to exclude four non-Caucasian potential jurors).

*Step Two of Batson Analysis*

■ Under the second step of the *Batson* analysis, Seaver had the burden of articulating a gender-neutral reason for the exercise of her peremptory strikes. The gender-neutral reason does "not have to be persuasive, or even plausible." *Reiners,* 664 N.W.2d at 832 (quotation omitted). Rather, "the focus of the inquiry is on the facial validity of the explanation." *State v. Gatson,* 801 N.W.2d 134, 141 (Minn.2011); *see Purkett v. Elem,* 514 U.S. 765, 768, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995) (same). In *J.E.B.,* the Supreme Court said:

> Our conclusion that litigants may not strike potential jurors solely on the basis of gender does not imply the elimination of all peremptory challenges. . . . Parties still may remove jurors who they feel might be less acceptable than others on the panel; gender simply may not serve as a proxy for bias. . . . Even strikes based on characteristics that are disproportionately associated with one gender could be appropriate, absent a showing of pretext.

511 U.S. at 143, 114 S.Ct. at 1429.

■ Seaver's gender-neutral reason for striking H was that H "was not very receptive to any of the questions," "would not forward information very freely," and had a hallway discussion with another potential juror in which H allegedly said that he would lie and "go along with what everybody else said." H denied making these statements but did not deny discussing the possible outcome of the case with other jurors in the hallway, outside the courtroom.[1] Seaver's gender-neutral reason for striking M was that M's ex-wife

1. The record reflects that the district court had not instructed the potential jurors not to discuss the case.

had custody of his children. Seaver stated,

> There's ... a factual scenario that's going to arise where some people may think that [Seaver] neglected her children because they were left with somebody that she didn't know that well.... And as such, we are a little leery with people that have children in that they might judge her from that perspective.

We conclude that the reasons given by Seaver for exercising peremptory strikes of H and M did not reveal any inherent discriminatory intent. *See generally Carridine*, 812 N.W.2d at 140 ("A juror's 'hesitancy' is a legitimate race-neutral, nondiscriminatory reason for a peremptory strike."); *Pendleton*, 725 N.W.2d at 727 (noting that no discriminatory intent was inherent when state struck juror because of her negative feelings towards plea agreements and sympathy towards the defense's theory of the case).

Because Seaver articulated gender-neutral reasons for striking H and M, we conclude that she met her burden of production under step two of the *Batson* analysis.

*Step Three of Batson Analysis*

■■■■■ *Batson's* third step requires two showings of the party making the *Batson* challenge: (1) a demonstration that the proffered [gender]-neutral reason is not the real reason for the strike and (2) a demonstration that the real reason was the [gender] of the prospective juror. One way to show purposeful discrimination is to show that a [party's] proffered reason for striking a prospective juror [of one gender] applies equally to a similar [prospective juror of a different gender] who is permitted to serve.

*State v. Bailey*, 732 N.W.2d 612, 618 (Minn.2007) (citation omitted). "[Another] way to demonstrate the first part of pretext is to challenge the relevance or validity of the proffered [gender]-neutral reason, but the failure of that reason does not demonstrate the second part, that the real reason was based on [gender]." *Angus*, 695 N.W.2d at 117. "[T]he elimination of a defendant's [gender]-neutral reason does not, by itself, support a presumption or even an inference that the real reason was [gender]." *Id.* at 117–18. "The state still must prove that the real reason was [gender] discrimination by identifying some circumstance that raises an inference of discrimination." *Id.* at 118.

*Potential Juror H*

■■■■■ To demonstrate pretext regarding Seaver's articulated gender-neutral reasons for striking H, the state argued that Seaver should have brought H's alleged hallway conversation to the attention of the district court. But the state offered no argument, and the district court made no findings, about H's demeanor or the alleged hallway conversation before the court ruled on the state's *Batson* challenge of potential juror H. We conclude that the state failed to carry its burden of proving that Seaver's proffered gender-neutral reason for its peremptory strike of H was pretextual. The district court therefore clearly erred by sustaining the state's *Batson* challenge to H.

*Potential Juror M*

To demonstrate pretext regarding Seaver's articulated gender-neutral reasons for striking M, the state argued that many potential jurors were parents, not just M. "One way to show purposeful discrimination is to show that a [party's] proffered reason for striking a prospective ... juror [of one gender] applies equally to a similar [person of a different gender] who is permitted to serve." *Bailey*, 732 N.W.2d at 618; *see also Carridine*, 812 N.W.2d at 138

(noting that differences between potential jurors who were struck from a panel "supported the conclusion that there was no pretext for the strike"). The potential jurors being compared must be · similarly situated; differences between the potential jurors may support a conclusion that no pretext for the peremptory strike existed. *See Carridine,* 812 N.W.2d at 138 (stating that prospective juror whose family member was charged with a nonviolent crime was not similarly situated to a potential juror whose family member was charged with a violent crime); *State v. Gomez,* 721 N.W.2d 871, 885 (Minn.2006) (holding that defendant failed to prove that state's striking of a potential juror demonstrated purposeful discrimination, reasoning that, even though the potential juror and three other potential jurors all expressed reluctance to sit in judgment of others, the three other potential jurors "gave qualitatively different answers" from answer given by the struck potential juror).

■ Here, although several potential jurors, including M, were parents, Seaver's articulated gender-neutral reasons for striking M included both that he was a parent *and* that his ex-wife had custody of his children. The state did not show that any other potential jurors, who were parents, described similar circumstances regarding custody of their children. Our review of the record reveals that although two potential female jurors, whom Seaver did not peremptorily strike, were divorced and had children who did not live with them, they expressed during voir dire that their children were adults. The fact that the female jurors described their children as adults rendered the issue of child custody irrelevant to Seaver and therefore supports a conclusion that the potential jurors, whom Seaver did not strike, were situated differently from juror M.

We conclude that the state failed to carry its burden of proving that Seaver's articulated gender-neutral reason for its peremptory strike of M was pretextual. The district court therefore clearly erred by sustaining the state's *Batson* challenge to M.

When a district court erroneously denies a defendant's peremptory strike, the defendant is "entitled to a new trial." *Campbell,* 772 N.W.2d at 862. Because we conclude that the district court clearly erred by sustaining the state's *Batson* challenges to jurors H and M and denying Seaver's peremptory strikes of jurors H and M, Seaver is entitled to a new trial.

## II.

For the purpose of providing guidance to the district court on remand, we address two additional arguments raised by Seaver.

■ Seaver argues that the district court improperly prohibited her from explaining that her conduct was motivated by fear for her children's safety, when it granted the state's motion in limine to preclude "any testimony or argument that [Seaver] was afraid for the safety of her children" on the basis that the evidence was irrelevant and more prejudicial than probative.

■ A criminal defendant has a fundamental due-process right to explain her conduct to a jury, *State v. Jacobson,* 697 N.W.2d 610, 616 (Minn.2005) (quoting *State v. Brechon,* 352 N.W.2d 745, 751 (Minn.1984)), "even if the explanation is not a perfect defense," *State v. Thompson,* 617 N.W.2d 609, 613 (Minn.App.2000). This right "does not mean that the defendant's testimony is unrestricted" because the criminal defendant must still "comply with the evidentiary rules." *State v. Richardson,* 670 N.W.2d 267, 282 (Minn.2003).

But "[w]hen the defendant's right to testify conflicts with a rule of evidence, the constitution demands that restrictions imposed on that right 'not be arbitrary or disproportionate to the purposes they are designed to serve.'" *Id.* (quoting *Rock v. Arkansas*, 483 U.S. 44, 56, 107 S.Ct. 2704, 2711, 97 L.Ed.2d 37 (1987)); *see State v. Buchanan*, 431 N.W.2d 542, 550 (Minn.1988) (noting that "the defendant's constitutional right to give testimony regarding his intent and motivation is very broad" but that the "right is not without limitation").

At trial, Seaver testified that Rollins's sister babysat her children at Rollins's apartment, and that when she saw the police surrounding Agee, she did not ask for help because her children were at Rollins's apartment. But when Seaver attempted to testify about why she gave inconsistent statements to the police, the district court stopped her from explaining that it was because her children were at Rollins's house. When the prosecutor asked Seaver during cross-examination why she did not tell M.J. that he was going to be robbed, she said, "there's a reason why I did not tell him," but she did not describe her fear for her children's safety. Seaver's motivation is relevant to explain her conduct. On remand, the district court must not exclude or limit Seaver's testimony that explains her alleged motivation behind her conduct.

Seaver also argues that the district court erred when it failed to give an accomplice-testimony jury instruction because two accomplices, Stene and Agee, testified against her.

 Minnesota Statutes section 634.04 (2010) prohibits convictions based on uncorroborated accomplice testimony. District "courts have a duty to instruct juries on accomplice testimony in any criminal case in which it is reasonable to consider any witness against the defendant to be an accomplice." *State v. Strommen*, 648 N.W.2d 681, 689 (Minn.2002). A witness is an accomplice if "the witness could have been indicted and convicted for the crime with which the defendant is charged." *State v. Pendleton*, 759 N.W.2d 900, 907 (Minn.2009) (quotation omitted). When it is unclear whether a person is an accomplice, the district court should give the accomplice-testimony jury instruction and allow the jury to decide whether the person was an accomplice. *State v. Barrientos–Quintana*, 787 N.W.2d 603, 612 (Minn.2010). "Because of the very real possibility that the jury could reject corroborating evidence and convict on the testimony of the accomplice standing alone, the court's duty to instruct on accomplice testimony remains regardless of whether counsel for the defendant requests the instruction." *Id.* at 610 (quotations omitted).

 Both Stene and Agee were accomplices: they drove to M.J.'s apartment with Seaver; they were present at M.J.'s apartment during the burglary, assault, and attempted robbery; they participated in the crimes; and the state charged them with crimes for their involvement. Stene testified that she entered a guilty plea to the charges against her, and Agee testified that his charges were still pending. Because Stene and Agee were accomplices, the district court had a duty to give the accomplice-testimony jury instruction, even if it was not requested by the defendant. *Id.* On remand, if either Stene or Agee testifies against Seaver, the district court must give the accomplice-testimony jury instruction.

## DECISION

Because we conclude that the district court clearly erred when it sustained the

state's gender-based *Batson* challenges to Seaver's exercise of peremptory strikes of two potential male jurors, Seaver is entitled to a new trial. We reverse Seaver's convictions and remand for a new trial.

**Reversed and remanded.**