# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A14-1824

State of Minnesota,
Respondent,

vs.

Lakeisha Noal Ivy,
Appellant.

**Filed December 14, 2015**
**Affirmed**
**Reyes, Judge**

Ramsey County District Court
File No. 62CR135634

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Peter Marker, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jenna Yauch-Erickson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Reyes, Presiding Judge; Connolly, Judge; and Rodenberg, Judge.

## S Y L L A B U S

A peace officer working as a privately employed security officer who has probable cause to arrest an individual is executing a duty imposed by law under Minn. Stat. § 609.2231, subd. 1, the assault statute, and is acting in his capacity as a peace officer.

# O P I N I O N

**REYES**, Judge

Appellant challenges the sufficiency of the evidence supporting her fourth-degree assault conviction and argues that the district court committed prejudicial error by denying her *Batson*-racial-bias challenge to the state's preemptory strike to remove a prospective African-American juror. We affirm.

## FACTS

*The Altercation*

Regions Hospital (the hospital) is a level-one trauma hospital with an emergency room that is a lockdown facility. It employs hospital safety and security officers and uniformed security officers who are off-duty peace officers. Hospital security officers wear pants with cargo pockets and pullover shirts with a badge that says "hospital safety and security officer." In contrast, hospital peace officers employed by the hospital wear police uniforms with a hospital ID. Hospital peace officers' duties include enforcing the hospital's policies, allocating visitor passes, and monitoring the secured doors at the emergency room, as well as assisting hospital security officers and handling police matters that the security officers cannot handle.

On July 2, 2013, appellant Lakeisha Ivy went to the hospital to visit her friend N.B., who had been shot in the leg. A hospital staff member called for a hospital peace officer (the officer[1]) to N.B.'s room because her guests were yelling profanities and racial

---

[1] The officer is also employed as a St. Paul Police Officer with 21 years of experience with the force and 12 years of experience at the hospital.

2

epithets while being verbally aggressive toward hospital staff. Some of the hospital guests, including appellant, had sneaked back to the emergency room without passes.

The officer testified to the following events at trial. The visitors in N.B.'s room were rude to staff, loud, and disruptive. Another friend, N.M., was asked to leave the room because she was in violation of the hospital's two-visitors-per-room policy, whereas appellant was asked to leave because she was yelling and swearing. Accordingly, the officer began to escort the two visitors out to the lobby.

While being escorted out, appellant continued to yell obscenities and racial epithets. The officer informed appellant that if she continued to behave in this manner that she would not be able to visit her friend in the hospital for the rest of the day. In response, appellant "instantly turned around, rushed toward [the officer] and grabbed [his] uniform shirt." Appellant ripped the front part of the officer's shirt, button, and the leather piece that holds the officer's microphone from his shirt. The officer grabbed appellant's hand and told her to let go. Appellant started to claw the officer's face with her hands and fingernails, leaving scratch marks and blood on his face. The officer pushed appellant away again, intending to knock her down to create space between them. He ordered appellant to stay back, but when she charged at him again, he sprayed mace at her. The officer then arrested appellant. The state charged appellant with one count of fourth-degree assault of a peace officer pursuant to Minn. Stat. § 609.2231, subd. 1 (2012).

<u>*Voir Dire Proceedings*</u>

On June 2, 2014, prospective juror number 20 (juror 20) stated during voir dire that (1) she had two cousins who had been charged with crimes;( 2) she was pulled over while driving and thought the officer used her boyfriend's prior gang involvement as a reason to search her car; and (3) she described a negative hospital experience where her mother, who had no proof of health insurance, was refused service. Juror 20 stated that when they were at the hospital "we were probably doing things and acting in a way you're not supposed to act."

On June 3, 2014, the state made a motion to release juror 20 using its first peremptory challenge. Appellant, who is African American, raised a *Batson* challenge stating that the strike was due to juror 20's race as an African American and that the state did not ask her any questions. The district court determined that (1) there was a prima facie case of racial discrimination; (2) the state offered one race-neutral and one non-race neutral reason for the challenge; and (3) there was no purposeful or discriminatory intent. The district court therefore denied appellant's *Batson* challenge. Appellant was found guilty of fourth-degree assault of a peace officer. This appeal follows.

## ISSUES

I.      Did sufficient evidence exist to support appellant's conviction for assault while the officer was executing a lawful arrest or executing any other duty imposed by law?

II.     Did the district court commit clear error in denying appellant's *Batson* challenge?

4

**I.    Sufficient evidence in the record supports the conviction for assault where the officer was executing a duty imposed by law.**

In a claim of insufficient evidence, this court's review is limited to a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, is sufficient to allow the jurors to reach the verdict that they did. *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). We must assume that "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989). It is not our role as a reviewing court to evaluate the credibility of the evidence. *State v. Hawes*, 801 N.W.2d 659, 670 (Minn. 2011).

Appellant challenges the sufficiency of the evidence supporting her fourth-degree assault conviction. To convict a person of fourth-degree assault, the state must prove beyond a reasonable doubt that the person (1) physically assaulted a peace officer; (2) the officer was executing a lawful arrest or executing any other duty imposed by law; and (3) the assault inflicts demonstrable bodily harm. Minn. Stat. § 609.2231, subd. 1. More specifically, appellant argues that the state failed to present sufficient evidence proving that the officer was either executing a lawful arrest or executing any other duty imposed by law.

A peace officer is "charged with the prevention and detection of crime and the enforcement of the general criminal laws of the state" and "has the full power of arrest." Minn. Stat. § 626.84 subd. 1(c)(1) (2014). A peace officer's duties "include exercises of

professional judgment that are legitimately calculated to protect the health, safety, and general welfare of the public." *In re Claim for Benefits by Sloan*, 729 N.W.2d 626, 629-30 (Minn. 2007) (reversing an agency's decision and concluding that a Minnesota peace officer was eligible for disability pension because he was injured during the course and scope of his duties as a peace officer.) Moreover, "the duties of a police officer in emergency situations require the exercise of significant independent judgment and discretion." *Id.* at 630. Finally, "to encourage responsible law enforcement . . . police are afforded a wide degree of discretion precisely because a more stringent standard could inhibit action." *Id.*

Appellant argues that because the alleged fourth-degree assault occurred when appellant was scratching the officer's face, the officer could not have been simultaneously "executing a lawful arrest." Further, appellant argues that it has not been established that, at the time the officer was scratched, the officer was executing any other duty imposed by law, but rather was enforcing hospital policy as a private security guard for the hospital.[2] Appellant's argument that the evidence was insufficient to prove beyond a reasonable doubt that the assault occurred while the officer was executing a duty imposed by law is without merit.

The security manager at the hospital testified that St. Paul or Ramsey County police officers working as hospital peace officers are called on for assistance when there are uncooperative hospital guests and that "the badge seems to carry a lot more weight in

---

[2] Appellant does not cite to any caselaw distinguishing the difference between "hospital policy" and a hospital peace officer's duties.

some people's eyes." He also testified that the hospital peace officers are necessary in the lockdown emergency room for safety and that the hospital calls the hospital peace officers when someone is uncooperative and they need additional assistance. Finally, he stated that the hospital has particular concerns whenever a gunshot victim is receiving treatment, and these patients become a priority. In addition, the officer testified that the hospital peace officers wear their uniforms, have full police authority, and "assist security and deal with any *police matters* at the hospital." (Emphasis added) This testimony demonstrates that hospital peace officers employed at the hospital may have the same duties, powers, and expectations as if they were on duty. Therefore, the evidence shows that the duties that off-duty officers have while working at the hospital may be the same duties imposed by law.

Nurse R.H. testified that appellant was disturbing not only the patient in the room, but also other patients in the emergency room. Appellant was disturbing the peace and engaging in disorderly conduct. By escorting appellant out of the emergency room, the officer was protecting the health and safety of the hospital's patients and preventing breach of the peace. Moreover, the evidence was sufficient to prove beyond a reasonable doubt that the assault occurred while the officer was escorting appellant out of the room. As such, when the officer was called to the emergency room to escort appellant out of the room, he was executing a duty imposed by law.

Under *State v. Childs*, the supreme court held that a peace officer working as a privately employed security officer for purposes of the arrest assumes the additional role of a peace officer. 269 N.W.2d 25, 27 (Minn. 1978) (holding that under the shoplifting

7

arrest statute, a peace officer has right to detain when acting in his capacity as a security officer and right to arrest when acting in his capacity as peace officer). The officer in *Childs* had probable cause to believe that the defendant had committed a crime. *Id*. The supreme court stated that the district court "could conclude as it did, that defendant's 'loitering, persistent fingering of merchandise, and, most important, the covert shielding of a bulge in defendant's pocket,' constituted probable cause for defendant's arrest." *Id*. at 27-28 (quoting the district court). Although the defendant in *Childs* was initially arrested based on probable cause for shoplifting, the subsequent lawful search and seizure leading to arrest for drug possession remained lawful. *Id* at 28.

As in *Childs*, the officer here had probable cause to believe that appellant had committed a crime even if she was not subsequently charged with or convicted of that crime. Nurse R.H. testified that appellant had sneaked back to the emergency room, where she did not have authorization to be. Appellant was verbally abusive toward hospital staff and was disturbing patients' care and safety. Because appellant trespassed into the emergency room and was disturbing the peace, the officer had probable cause to arrest her. Nevertheless, he escorted appellant out of the emergency room. While escorting her out of the room, appellant rushed at him, giving him additional probable cause to arrest appellant for the crime of assault. These actions demonstrate that the officer had multiple reasons to establish probable cause for appellant's arrest.

Therefore, we hold that a peace officer working as a privately employed security officer who has probable cause to arrest an individual is executing a duty imposed by law

8

under Minn. Stat. § 609.2231, subd. 1, the assault statute, and is acting in his capacity as a peace officer.

**II.    The district court did not err in denying appellant's *Batson* challenge.**

A district court's determination on a *Batson* challenge will not be reversed unless clearly erroneous. *State v. McDonough*, 631 N.W.2d 373, 385 (Minn. 2001). Based on all relevant factors, the district court is in the position to determine, "whether the circumstances of the case raise an inference that the challenge was based upon race. We have consistently given deference to the district court's rulings on *Batson* issues, realizing that the record may not accurately reflect all relevant circumstances that may properly be considered." *State v. White*, 684 N.W.2d 500, 506 (Minn. 2004) (citations omitted).

Appellant argues that the district court committed prejudicial error by denying her *Batson*-racial-bias challenge to the state's preemptory strike to remove juror 20. "Generally, each party has a limited number of peremptory challenges in a jury trial." *State v. Diggins*, 836 N.W.2d 349, 354 (Minn. 2013). "Unlike a challenge for cause, a peremptory challenge allows a party to strike a prospective juror without having to explain the reason for the strike." *Id.* But the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits using peremptory challenges to exclude a prospective juror based solely on race. *Id.*

"In *Batson*, the Supreme Court established a three-step [test] to determine whether a peremptory challenge is motivated by a prohibited discriminatory intent." *State v. Greenleaf*, 591 N.W.2d 488, 500 (Minn. 1999) (citing *Batson v. Kentucky*, 476 U.S. 79,

9

106 S. Ct. 1712 (1986)).  The defendant must first make a prima facie showing that the state exercised the challenge on the basis of race.  *Id.*  If no prima facie showing is found then the inquiry ends and the court overrules the objection.  *See* Minn. R. Crim. P. 26.02, subd. 7(3)(a), (codifying the *Batson* test).  Second, if a prima facie showing is made, then the burden shifts to the state to articulate a race-neutral reason for the challenge.  *Greenleaf*, 591 N.W.2d at 500.  Third, if the state articulates a race-neutral reason, the court must then determine whether the defendant carried its burden of proving that the race-neutral reason was a pretext for purposeful discrimination.  *Id.  See also* Minn. R. Crim. P. 26.02, subd. 7(3)(c).

In *State v. Seaver*, we noted that the supreme court has emphasized "[t]he importance of clarity at each step of the analysis." 820 N.W.2d 627, 633 (Minn. App. 2012) (quotations omitted).  "At each step of the analysis, the district court must determine whether the appropriate party has met its burden before the court continues to the next step in the analysis."  *Id.*  Here as in *Seaver*, the district court did not follow the *Batson* procedure of ruling at each step of the analysis.  *Id.*  But, we do not reverse for failing to follow the procedure; instead we examine the record without deferring to the district court's analysis.  *Id.*

## A.    Prima facie showing

Under the *Batson* test's first step, the defendant must make a prima facie showing that the state exercised its peremptory challenge against a prospective juror on the basis of race by establishing that (1) the defendant is a member of a particular racial group; (2) the prosecutor used peremptory challenges to remove members of the defendant's race

from the jury panel; and (3) that these facts and other relevant circumstances raise an inference that the prosecutor is discriminating on the basis of race." *Moore*, 438 N.W.2d at 107. An inference of discrimination is established when there is "proof of disproportionate impact upon the racial group." *Id*. A court finds an inference of discrimination by examining the surrounding circumstances, the prosecutor's questions in voir dire or reasons for peremptory challenges, and his or her past patterns of racial discrimination in jury selection. *Id*. A court may also find an inference of discrimination where all members of a particular group are excluded from the venire. *Id*.

Here, the appellant is African American, and the juror who was struck was also African American.[3] In addition, the prosecuting attorney did not ask juror 20 any questions before striking her from the jury. Moreover, the race of appellant and the race of the victim hospital peace officer were different. "Whether the circumstances of the case raise an inference of discrimination depends in part on the races of the defendant and the victim." *Angus v. State*, 695 N.W.2d 109, 117 (Minn. 2005) (finding disproportionate impact where four of seven male jury members were eliminated using peremptory strikes and thus establishing a prima facie case of gender discrimination). Finally, the state released another juror who identified himself as Asian American. The district court found that appellant made a prima facie showing that the state exercised its challenge to juror 20 based on race. We agree with the district court.

---

[3] The one remaining African American, juror 5, who self-identified as mixed race African American was not struck from the jury. Prospective juror 12, an Asian American, and prospective juror number 3, an African American, were struck for cause during voir dire.

11

**B.      Race-neutral reasons for the peremptory strike**

If the defense makes a prima facie showing of discrimination, the burden shifts to the state to articulate a race-neutral reason for exercising the challenged peremptory strike. "At this second step, the focus of the inquiry is on the facial validity of the explanation; therefore, the prosecutor's reason will be deemed race-neutral unless discriminatory intent is inherent." *State v. Gatson*, 801 N.W.2d 134, 141 (Minn. 2011); *see also Purkett v. Elem*, 514 U.S. 765, 767-68, 115 S. Ct. 1769, 1771 (1995). The prosecutor's explanation "need not be persuasive or even plausible." *State v. Martin*, 773 N.W.2d 89, 101 (Minn. 2009).

The prosecutor informed the court that it struck juror 20 because:

> [Juror 20] described in pretty great detail the situation that is so close to the facts of what are going to be presented here that I don't think there's any way she could sit in a fair and impartial judgment of the State and the officer in this case. She described the situation in which her mom needed surgery and she felt that because of her mom's race she was not being treated fairly at the hospital.
> . . . .
> Moreover, [juror 20] described at least two family members, I believe, who have had experience involvement with law, recall criminal charges certainly something I take into consideration as a factor with everybody. She described her own and what happened with that experience with law enforcement, in great detail. The police officer who was pushing her and wanting to search her car, so she had a bad experience there. She also mentioned that her significant other has had some involvement with law enforcement. She didn't elaborate on it, but she made reference to the officer knowing him when he was younger, and believing there to be some gang involvement. So it leads me to believe there have been law enforcement contacts there as well. And gives me causes particularly in a case like this where credibility of the law enforcement officer is going to be the key thing for the jury to decide whether or not the defendant

12

is guilty of this crime. So those are the race neutral reasons that are put forth for striking [juror 20] in this case.

The district court found that the prior police contact was a race-neutral reason. But, the district court found that the hospital experience was not race-neutral. Appellant challenges the district court's finding that the state's race-neutral reason for striking juror 20 was sufficient to satisfy *Batson* when the court also found that the state presented an articulated non-race-neutral reason for the strike. Conversely, respondent challenges the district court's findings that juror 20's hospital-emergency-room experience was not race-neutral on its face.

In *Diggins*, the supreme court held that, under the second prong, the state provided a race-neutral reason where a juror acknowledged during voir dire that he had friends who had been convicted of drug possession and weapons offenses. 836 N.W.2d at 356. Similarly here, juror 20's cousins were convicted of crimes. One of the cousins lives in another state, and she is not close to him. However, she is close to her other cousin who was convicted. Moreover, appellant and her boyfriend had prior direct and negative encounters with the police. We agree with the district court that this is a race-neutral reason.

The state satisfied the *Batson* challenge by giving not just one, but two race-neutral reasons. Here, both appellant and juror 20 had strikingly similar hospital experiences. Both African-American women had a loved one at a hospital who was not receiving the care that they believed was appropriate. They also reacted in a similar way in the hospital because they believed that the inferior care was due to race. Based on

13

nurse R.H.'s and the officer's testimony, appellant was loud and assaultive towards the hospital staff. Likewise, juror 20 stated that when the hospital would not treat her mother, she and others were "doing things and acting in a way you're not supposed to act." While race was an issue in both situations, the focus is on whether *the reason given by the prosecutor* is race-neutral. Here, the reason given by the prosecutor, that the two situations were so similar to each other, is race-neutral. Therefore, we conclude that the similarity of factual situations is a race-neutral reason because the prosecutor's reason was neutral without an inherent discriminatory intent and while not required, the explanation was persuasive and plausible.

## C.     Pretext for purposeful discrimination

Last, if the state's explanation for the strike is race-neutral, the district court determines "whether the reason given was a pretext for purposeful discrimination." *State v. Carridine*, 812 N.W.2d 130, 136 (Minn. 2012). The district court may also consider whether the challenged peremptory strike "will result in the disproportionate exclusion of members of a certain race." *Id.* Conversely, the inclusion of a person of color on the jury is significant in showing that the strike is not pretextual. *See State v. Everett*, 472 N.W.2d 864, 869 (Minn.1991) (considering it "significant that the jury ultimately included a member of a minority" race). Appellant carries the burden to demonstrate pretext through a two prong analysis: (1) "the proffered race-neutral reason is not the real reason for the strike" and (2) "the real reason was the race of the veniremember." *Angus* 695 N.W.2d at 117. We give the district court's findings on the third step considerable deference. *State v. Taylor*, 650 N.W.2d 190, 202 (Minn. 2002). "This deference is

14

warranted because the district court occupies a unique position to observe the demeanor of the prospective juror and evaluate the credibility of the party that exercised the peremptory challenge, and the 'record may not reflect all of the relevant circumstances that the court may consider.'" *Diggins*, 836 N.W.2d at 355 (quoting *Pendleton*, 725 N.W.2d 717, 724 (Minn. 2007)). After carefully evaluating the credibility of the parties, the district court found that the reason for the peremptory strike by the state was not a pretext for purposeful discrimination.

Generally, a juror or the juror's close family member's involvement with the legal system can be a legitimate race-neutral reason for the state to exercise a preemptory challenge. *State v. Reiners*, 664 N.W.2d 826, 832 (Minn. 2003). Here, juror 20 indicated she had two cousins who had been charged with crimes, one to whom she was close. She also stated that the previous year she was pulled over for having a cracked windshield. She provided the officer with a valid license and insurance, but the officer recognized her boyfriend as a prior gang member from ten years before. The officer was claiming that her boyfriend was an active gang member, and she thought that the officer was using this as a reason to search her car. The state cites juror 20's involvement with law enforcement as a race-neutral reason. Therefore, the district court did not err in determining that the state's proffered explanation was not merely a pretext for the discriminatory motive. *See id.*; *State v. Martin*, 614 N.W.2d 214, 222 (Minn. 2000) (holding that a close family member's involvement with the legal system is a legitimate race-neutral reason for the state to exercise a preemptory challenge).

Furthermore, as a reason for the peremptory strike, the state cited juror 20's strikingly similar hospital situation. Because the facts of juror 20's experience and the case at hand were so similar, the state did not believe that the juror could be fair and impartial. Purposeful discrimination can be demonstrated by showing that the party's purported reason for striking a prospective juror of one race also applies in the same way to a prospective juror of another race who was chosen to serve on the jury. *Seaver*, 820 N.W.2d at 635. No other juror had a negative hospital experience where race was involved and was permitted to serve on the jury. Similarly, in *Seaver*, we found that the challenging party failed to show that there was pretext where the struck juror was not similarly situated with other jurors (concluding that the state failed to show that any other prospective jurors who were parents, described similar circumstances regarding custody of their children and that the strike was pretextual.) *Id* at 635-36.

Additionally, while appellant argues that juror 20 was struck for a reason limited to the minority community that would only have a negative impact on persons of color, "[e]ven strikes based on characteristics that are disproportionately associated with one [race] could be appropriate, absent a showing of pretext." *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 143, 114 S. Ct. 1419, 1429 (1994). Therefore, as the U.S. Supreme Court held in *J.E.B.*, the prosecutor's strike was appropriate since there was no pretext. *Id*.

### DECISION

There is significant evidence in the record supporting appellant's conviction for assault because the peace officer had probable cause to arrest appellant while he was

16

executing a duty imposed by law and acting in his capacity as a peace officer.  Also,

because the district court did not err in denying appellant's *Batson* challenge, we affirm.

**Affirmed.**